1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

KETEMA ROSS, et al.,

Plaintiffs,

v.

JAY INSLEE, in his official capacity
as Governor of Washington, et al.,

Defendants.

NO:  4:14-CV-0130-TOR

ORDER DENYING PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION

13

14

15

16

17

18

19

20

BEFORE THE COURT is Plaintiffs' Motion for Preliminary Injunction
(ECF No. 17).  This matter was heard with oral argument on October 21, 2014.
Andrew Sean Biviano, David R. Carlson, and Emily Cooper appeared on behalf of
Plaintiffs.  Sarah J. Coats appeared on behalf of Defendants.  The Court has
reviewed the briefing and the record and files herein, and is fully informed.

//

//

//

ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION ~ 1

1

BACKGROUND

2    Plaintiff Ketema Ross is a patient at Eastern State Hospital.  He was

3   committed there in 2007 following an acquittal of criminal charges on grounds that

4   he was not guilty by reason of insanity.  ECF No. 1, Complaint, at 4.  Plaintiff

5   Daniel Gautier is a patient at Western State Hospital.  He has been committed there

6   since he agreed to plead not guilty by reason of insanity to criminal charges.  ECF

7   No. 1 at 6.[1]  Plaintiff Disability Rights Washington ("DRW") is a nonprofit

8   organization that advocates for individuals who have physical, mental, and

9   developmental disabilities in the state of Washington.  DRW asserts that it has

10  jurisdictional standing to represent the interests of all patients who have been

11  committed after a finding of not guilty by reason of insanity ("NGRI patients").

12  ECF No. 1 at 10.  Defendants have not challenged DRW's associational standing

13  and the Court assumes for the purpose of the instant motion that DRW has

14  associational standing and may properly represent the interests of NGRI patients in

15

16

_____

17  [1]  J.T. was also a named plaintiff in the complaint and was extensively discussed in

18  the motion for preliminary injunction.  J.T. has been released from his

19  commitment.  At oral argument, Plaintiff's counsel represented that any claims

20  with regard to J.T. are now moot and that he should be dismissed from the case.

ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION ~ 2

Washington State.[2]  Plaintiffs have filed this suit alleging that certain aspects of Washington State law dealing with the commitment of "NGRI patients" violates the Americans with Disabilities Act, the Rehabilitation Act, the Ex Post Facto clause of the Constitution, and NGRI patients' Fourteenth Amendment rights. ECF No. 1 at 27–38.  In their motion for preliminary injunction, Plaintiffs sought broad relief, including the immediate release of a number of patients.  ECF No. 17

---

[2] The Court is required to determine its own jurisdiction, including the standing of parties.  The Court questions the associational standing of DRW and its ability to represent the rights of all NGRI patients in the absence of class certification.  *See, e.g.*, *M.R. v. Dreyfus*, 697 F.3d 706, 738 (9th Cir. 2012) ("Subject to exceptions not applicable here, without a properly certified class, a court cannot grant relief on a class-wide basis." (internal quotation marks and alteration omitted)).  The Court notes that in each of DRW's other federal suits it appears a class was certified. *See, e.g.*, *Allen v. Western State Hospital*, No. 99-CV-5018-RJB (W.D. Wash.). However, because the Court concludes that Plaintiffs are not entitled to the injunctive relief they seek at this time, even if DRW represents the interests of all NGRI patients, the Court will reserve determination of the issue of associational standing and whether class certification is necessary until after the parties have fully briefed the issues.

ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION ~ 3

at 30–31.  At oral argument, Plaintiffs narrowed their request for relief to merely four items:  (1) "a declaratory judgment that RCW 10.77.270, as applied to persons who have been determined by clinicians not to be mentally ill, violates the Fourteenth Amendment to the Constitution and enjoining its enforcement," (2) a "declaratory judgment that patients must receive a full discharge when they are no longer dangerous or no longer have a treatable mental illness," (3) an "injunction prohibiting Defendants from confining patients or threatening to confine patients as a consequence for violations of institutional rules," and (4) a Court-appointed monitor to oversee the implementation of these injunctions.

Under Washington State law, a defendant in a criminal case "may move the court for a judgment of acquittal on the grounds of insanity."  RCW 10.77.080.  The burden is upon the defendant to establish "by a preponderance of the evidence that he or she was insane at the time of the offense or offenses with which he or she is charged."  RCW 10.77.080; *State v. Monaghan*, 166 Wash. App. 521, 530 (2012) ("Washington law presumes that a person is sane at the time the person commits a crime. . . .  Thus, a defendant who claims the defense of insanity must carry the burden of showing by a preponderance of the evidence that he or she was insane at the time of the offense.").  If the court finds the defendant carried his burden, he is acquitted of the crime.  RCW 10.77.080.  If the court denies the motion, the question may still be submitted to the trier of fact at trial.  *Id.*

ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION ~ 4

1    If found not guilty by reason of insanity, a person will be committed if the

2  person presents a substantial danger to others or "presents a substantial likelihood

3  of committing criminal acts jeopardizing public safety or security . . . ."  RCW

4  10.77.110(2).  Thus, commitment following acquittal by reason of insanity requires

5  a determination by a preponderance of the evidence that the person has a mental

6  illness and that the person presents a danger to others.  *See State v. Bao Dinh*

7  *Dang*, 178 Wash. 2d 868, 876, 881–82 (2013) (en banc).[3]

8    "A person so committed shall receive habilation services according to an

9  individualized service plan specifically developed to treat the behavior which was

10  the subject of the criminal proceedings."  RCW 10.77.110(2).  Also, NGRI patients

11  "shall have a current examination of his or her mental condition made by one or

12  more experts or professional persons at least once every six months."  RCW

13  10.77.140.  The secretary of DSHS is required to provide written notice to the

14  committing court regarding compliance with this provision.  *Id.*

15

16

17  [3] Washington State law recognizes a difference in the standards of proof required

18  for civil commitment of persons who have not committed criminal acts and those

19  that are acquitted of criminal liability by reason of insanity.  *See Bao Dinh Dang*,

20  178 Wash.2d at 881–82.

ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION ~ 5

NGRI patients may apply for permanent release from confinement.[4]  RCW 10.77.200.  If the secretary determines there are reasonable grounds for release, the secretary "shall authorize the person to petition the court."  RCW 10.77.200(1).  The secretary may also petition the court on his or her own.  RCW 10.77.200(2).  None of the procedural aspects of the petition process prohibit a patient from directly "petitioning the court for release or conditional release from the institution in which he or she is committed."  RCW 10.77.200(5).  Nor does any aspect prohibit a patient from filing a habeas corpus petition.  RCW 10.77.200(6).

Upon receipt of a petition for release, the court must hold a hearing within forty-five days.  RCW 10.77.200(3) (continuances allowed only for good cause).  "The burden of proof shall be upon the petitioner to show by a preponderance of the evidence that the person who is the subject of the petition no longer presents, as a result of a mental disease or defect, a substantial danger to other persons, or a substantial likelihood of committing criminal acts jeopardizing public safety or security, unless kept under further control by the court or other persons or institutions."  *Id.*  While the court will generally act as the finder of fact when

---

[4]  NGRI patients may also apply for conditional release, but that process is not presently at issue.

ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION ~ 6

1    hearing a petition for release, both the patient and the prosecuting attorney have a

2    right to request a jury trial.  *Id.*

3         In evaluating changes in commitment status, the secretary and courts are

4    advised by an independent public safety review panel ("PSRP").  RCW

5    10.77.270(1).  The PSRP is composed of members appointed by the governor and

6    consisting of a psychiatrist, a licensed clinical psychologist, a representative of the

7    department of corrections, a prosecutor or a representative of a prosecutor's

8    association, a representative of law enforcement or a law enforcement association,

9    a consumer and family advocate representative, and a public defender or a

10   representative of a defender's association.  RCW 10.77.270(2).  The secretary must

11   submit its recommendation to the PSRP for review thirty days prior to issuing a

12   recommendation for conditional release or forty-five days prior to issuing a

13   recommendation for permanent release.  RCW 10.77.270(3).  Thereupon, the

14   PSRP reviews the recommendation and may indicate whether it agrees with the

15   recommendation or would issue a different recommendation.  *Id.*

16        A person committed after judgment of not guilty by reason of insanity is

17   entitled to assistance of counsel "[a]t any and all stages of the proceedings" and "if

18   the person is indigent the court shall appoint counsel to assist him or her."  RCW

19   10.77.020.  Indigent NGRI patients requesting release may also have experts

20   appointed by the court to conduct evaluations.  RCW 10.77.200(3).

ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION ~ 7

DISCUSSION

"Plaintiffs are seeking relief only . . . for patients who have been diagnosed, by the consensus of Defendants' own clinicians, to not have a current treatable mental illness."[5] ECF No. 31 at 8. In such a situation, Plaintiffs argue, DSHS must promptly present NGRI patients to a state court for a release hearing. Plaintiffs assert that DSHS has intentionally delayed presenting release petitions to the Court, and requests the Court to issue an injunction compelling DSHS to present release petitions to the state courts for any NGRI patient whom clinicians have opined no longer suffers from a disease or mental defect that would make them dangerous to others. Additionally, Plaintiffs challenge the inclusion of review by the PSRP and the use of prolonged confinement as punishment for institutional rule violations. In short, Plaintiffs have raised procedural due process challenges contending that the processes by which NGRI patient petitions are

---

[5] Defendants dispute that a mental illness must be "treatable" before it qualifies for commitment. It appears the proper question is whether the individual has a mental illness, not whether the illness is treatable, to qualify for commitment. Thus, the Court will ignore Plaintiffs' periodic characterization of a mental illness as treatable or not as irrelevant to the question before the Court.

1    evaluated and brought to the state courts' attention are unconstitutionally

2    prolonged.

3              A summary of the evidence Plaintiffs' have proffered in support of their

4    motion for preliminary injunction is necessary at this point.  For this motion,

5    Plaintiffs represented to the Court that no factual disputes needed to be resolved by

6    the Court.  Plaintiffs filed a Complaint, ECF No. 1, and the factual allegations

7    therein are not verified. All material allegations which would warrant relief have

8    been denied by the Defendants in their Answer.  ECF No. 8.  The Plaintiffs have

9    proffered extensive briefing, declarations and medical records concerning J.T., but

10   he is no longer a Plaintiff in this case.  Plaintiffs have proffered extensive briefing,

11   declarations and medical records concerning B.Y.  B.Y. is not a named party in

12   this case and the Defendants dispute the conclusions Plaintiffs draw from B.Y.'s

13   records. Plaintiff's submitted an affidavit from the Medical Director of Western

14   State Hospital which affidavit was filed by the State in opposition to a motion for

15   preliminary injunction in another case.  ECF No. 18-1.  Plaintiffs also submitted a

16   news article, ECF No. 18-2, and a press release, ECF No. 18-3.

17             Defendants filed their opposition to the motion for preliminary injunction,

18   ECF No. 28, and according to the Local Rules for the Eastern District of

19   Washington no longer had any further opportunity to oppose subsequently filed

20   material.  *See* Local Rule 7.1 (allowing for a motion, response and reply only).

ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION ~ 9

Only then did Plaintiffs file four additional declarations and three sealed documents, making factual assertions not previously raised in their motion. The Court finds this late filed material contrary to settled motion practice. However, as will be discussed below, this late filed material does not carry Plaintiff's burden nor does it require Defendants to file a sur-reply.

Defendants raised two jurisdictional challenges to Plaintiffs' initial, broad preliminary injunctive request. First, Defendants contend that Plaintiffs claim for immediate release may only proceed under a habeas corpus petition brought pursuant to 28 U.S.C. § 2254. ECF No. 28 at 5–7. Plaintiffs' have now abandoned this claim in their oral preliminary injunction request. Plaintiffs have now focused on the States' processing of release petitions. A challenge that focuses solely on the petition process and not the substance of the petition is not precluded in a 42 U.S.C. § 1983 suit because the validity of the original commitment order is not called into question. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (plaintiff's request for injunctive relief requiring that witness statements be promptly date-stamped was not precluded in a § 1983 suit).

Second, Defendants contend that the Court should abstain from exercising jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971), because the state courts have continuing jurisdiction over the NGRI patients. ECF No. 28 at 7–10. A district court must abstain from exercising jurisdiction where doing so would

ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION ~ 10

interfere with ongoing state proceedings and "the federal action would enjoin the [state] proceeding or have the practical effect of doing so . . . ." *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008). Plaintiffs' requested relief, as narrowly defined at oral argument, is only to require that DSHS pursue the petition process in a more efficient manner and to enjoin DSHS form *obstructing* proper state proceedings. Were the Court to grant the relief requested, it would not enjoin or have the practical effect of enjoining state proceedings. Therefore, Defendants' jurisdictional challenges do not bar consideration of the issues presently before the Court.

To prevail on their motion for a preliminary injunction, Plaintiffs must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury if the injunction does not issue, (3) that a balancing of the hardships weighs in their favor; and (4) that a preliminary injunction will advance the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008) (citations omitted). To demonstrate that they are entitled to an injunction, Plaintiffs must satisfy each element. In evaluating the elements of a preliminary injunction, "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) ("We have also

articulated an alternate formulation of the *Winter* test, under which serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." (internal quotation marks omitted)).

## A. Likelihood of Success on the Merits

Plaintiffs must show that there are "serious questions going to the merits" of their claims. *Cottrell*, 632 F.3d at 1135.  They must also show that they are likely to succeed on those questions of merit. *Farris v. Seabrook*, 677 F.3d 858, 865 (9th Cir. 2012).

Plaintiffs' current challenges are founded on the alleged violation of Plaintiffs' Fourteenth Amendment procedural due process rights.  "To obtain relief on a procedural due process claim, the plaintiff must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (internal quotation marks omitted) (alteration in original).  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation omitted).

The issue before the Court is whether Plaintiffs are likely to succeed in showing that the government deprived them of their liberty interest "without constitutionally adequate procedure." *Shanks*, 540 F.3d at 1090. The adequacy of a given procedure

> requires consideration of three distinct factors:  First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  The Court accepts that the private interest involved in this case is a very important one, an individual's liberty interest.  Thus, the Court must balance Plaintiffs' liberty interest against the risk of erroneous deprivation and the government's interest.  The Court examines each of Plaintiffs' procedural challenges in turn.

Plaintiffs contend that the PSRP established by RCW 10.77.270 violates NRGI patients' due process rights because it unduly delays the process of release.  As such, Plaintiffs argue, it should be found "unconstitutional when applied to persons who have been determined by clinicians to not have treatable mental illness."  ECF No. 17 at 21.  In essence, Plaintiffs argue that when clinicians have opined that NGRI patients no longer suffer from a mental disease or defect, due process requires the circumvention of the PSRP review system.

1    The Court concludes that Plaintiffs have not demonstrated they are likely to

2    succeed in proving that the PSRP unconstitutionally delays the release of NGRI

3    patients.  First, there is no direct evidence before the Court that the PSRP process

4    unduly delays, that is, unconstitutionally delays, the release of NGRI patients that

5    are deserving of release.  While some evidence was proffered with respect to J.T.'s

6    and B.Y.'s cases, J.T. is no longer a named Plaintiff as he has been released and

7    B.Y. is not a named party.  Even if the Court were willing to consider their cases,

8    the Court would have to make two assumptions that it is unwilling to make.  First,

9    it would have to assume that the processes J.T. and B.Y. followed are

10   unconstitutional.  That is not at all clear to the Court on this skeletal record.

11   Second, it would have to extrapolate that all other similarly situated individuals

12   would suffer the same unconstitutional procedure.  That is another assumption the

13   Court is unwilling to make on this thin record.  Effectively, the Plaintiffs would

14   have this Court presume the state statutes unconstitutional at first glance, based on

15   anecdotal evidence.  *See* late filed Declaration of Kari Reardon, ECF No. 35

16   (defense attorney and member of the PSRP opines the slow process results in

17   excessive confinement, without naming a single example); late filed Declaration of

18   Cassie Trueblood, ECF No. 34 (defense attorney critical of the system and giving

19   one unnamed example of the slow process for conditional release (which is not at

20   issue before the Court at this time)); and late filed Declaration of Marc Stenchever,

ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION ~ 14

1   ECF No. 33 (B.Y.'s attorney critical of system and how B.Y.'s case has

2   progressed).  However, "[a] statute is presumed constitutional . . . and [t]he burden

3   is on the one attacking the legislative arrangement to negative every conceivable

4   basis which might support it, . . . whether or not the basis has a foundation in the

5   record."  *Heller v. Doe by Doe*, 509 U.S. 312, 320–21 (1993) (citation and internal

6   quotation marks omitted); *see also Cruzan v. Director, Mo. Dept. of Health*, 497

7   U.S. 261, 279 (1990) ("[D]etermining that a person has a 'liberty interest' under

8   the Due Process Clause does not end the inquiry; 'whether [the individual's]

9   constitutional rights have been violated must be determined by balancing his

10  liberty interests against the relevant state interests.'" (quoting *Youngberg v. Romeo*,

11  457 U.S. 307, 321 (1982))).

12       Plaintiffs next contend that NGRI patients' due process rights have been

13  violated because Defendants have failed to abide by the mandate of RCW

14  10.77.140 that DSHS provide periodic written notice of NGRI status to the state

15  courts.  The Court notes that Plaintiffs do not contend that DSHS has not been

16  providing the required notice.  Instead, Plaintiffs argue that even though the statute

17  only requires DSHS to update the court every six months, DSHS "is free to update

18  the court more frequently if the circumstances require it."  ECF No. 17 at 22.

19  Plaintiffs thus contend that "[i]f Defendants fail to immediately bring to the court's

20  attention that reasonable grounds exist for a patient's release, they facilitate the

ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION ~ 15

1    unconstitutional confinement of these patients." ECF No. 17 at 22–23. Plaintiffs,

2    however, do not dispute that NGRI patients may themselves petition the court

3    directly, out of cycle.

4        For the reasons given above, once again the Court is unwilling to presume

5    the state statute and procedure are unconstitutional on this bare bones record.

6        Plaintiffs lastly argue Defendants have unduly prolonged the length of NGRI

7    commitments as punishment for institutional rule violations. Specifically,

8    Plaintiffs contend that the continued detention of NGRI patients after a clinician

9    has opined they no longer suffer from a mental disease or defect "is thin pretext for

10   punishing the patient for the charged offense and eviscerates basic notions of due

11   process . . . ." ECF No. 17 at 25. Plaintiffs argue Defendants unlawfully "use

12   confinement as punishment for conduct that is perfectly legal but inconsistent with

13   institutional rules." *Id.* As evidence to support this contention, Plaintiffs point to a

14   single instance where J.T. broke institutional rules by conversing with another

15   patient. *Id.* at 26. This single instance is a thin reed by which to support such

16   drastic remedy as an injunction, especially since J.T. is no longer a party.

17   Moreover, the causal connection between that rule infraction and J.T.'s delayed

18   release is tenuous and not fully established in the record before the Court.[6]

---

19   [6] The only connection the evidence draws is one line from J.T.'s declaration that

20   states: "One of the reasons that it has taken so long for me to get grounds

Defendants have countered with a declaration from a psychiatrist who leads a treatment team at Eastern State Hospital and states "the patient's ability to follow rules and regulations" is a relevant factor in determining whether the patient is ready for release from NGRI commitment.  ECF No. 30.  At this point, based upon the extremely limited evidence Plaintiffs have submitted, and that evidence being controverted by the Defendants, the Court cannot conclude Plaintiffs are likely to succeed in establishing the Defendants unlawfully punish NGRI patients with continued confinement despite the fact that they should be released.

Plaintiffs' entire procedural due process argument boils down to this:  Once a NGRI patient has been determined by a clinician not to suffer from a mental disease or defect, due process requires the patient be immediately presented to a state court for release.  Plaintiffs in essence want to avoid all process but the final court determination.  Plaintiffs have failed to carry their burden to establish they are likely to succeed is showing that the interim processes unconstitutionally delay release such that they are entitled to a preliminary injunction.

---

privileges is because the hospital punished me for talking to a female patient and dropped my level."  ECF No. 21, at 5 ¶ 9.

**B. Likelihood of Irreparable Injury**

Plaintiffs seeking preliminary injunctive relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Winters*, 555 U.S. at 22 (emphasis in original).   "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Id.*

Plaintiffs contend that they will suffer irreparable harm because the "violation of constitutional rights constitutes irreparable harm as a matter of law." ECF No. 17 at 37 (quoting *Cohen v. Coahoma Cnty.*, 805 F. Supp. 398, 406 (N.D. Miss. 1992)).  However, as discussed above, Plaintiffs have not demonstrated that they are likely to succeed in establishing a violation of constitutional rights. Moreover, NGRI patients continue to be released after judicial determinations under the current statutory framework, as evidenced by J.T.'s release.  Plaintiffs informed the Court during oral argument that Plaintiff Ross is also scheduled to have his final discharge petition heard by a state court in the near future.  Because the current system continues to process release petitions, even if at a slower rate than Plaintiffs would like, Plaintiffs have not established they are likely to be irreparably harmed in the absence of an injunction.

## C. Balancing of the Hardships

"In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winters*, 555 U.S. at 24 (internal quotation marks and citation omitted). The Court must balance the hardships to the parties should the *status quo* be preserved against the hardships to the parties should Plaintiffs' requested relief be granted.  The Court is sensitive to the hardship represented by the confinement associated with NGRI patients' commitment.  However, NGRI patients will not face an increased hardship should the *status quo* be preserved.  They will be able to continue to petition for release.  An injunction abolishing the PSRP would place a hardship on the state to develop new procedures for review of secretary recommendations.  Plaintiffs have also conceded that DSHS has an interest in assuring that its facilities function in a safe and organized manner.  Part of that is assuring that patients follow the rules.  One way to assure that rules are followed is to punish infractions.  An injunction that would effectively prevent DSHS from enforcing the rules in its facilities would impose a hardship on those facilities in terms of patient and facility management.  Until such time as the evidence establishes that punishment for rule violations is merely designed to prolong commitment after a NGRI patient should otherwise be discharged, the balancing of

hardships remains tipped toward maintaining the *status quo* as this litigation advances.

### D. Advancement of the Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard to the public consequences in employing the extraordinary remedy of injunction." *Winters*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). "The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (citation omitted). When the government is a party, the balance of hardships and the advancement of the public interest are often seen to merge. *Id.* Regardless, the Court will not grant a preliminary injunction unless the public interests in favor of granting an injunction "outweigh the public interests that cut in favor of *not* issuing the injunction." *Cottrell*, 632 F.3d at 1138.

There is a general public interest that the public be protected from mentally ill people who pose a danger to others. The public also has an interest in assuring that people with mental health issues receive adequate treatment and, if committed, are released once their treatment has achieved its effect. Upon the evidence currently before the Court, the Court concludes that Plaintiffs have not demonstrated there is a greater public interest in granting the injunction than in not

granting it.  The treatment of mental health issues will continue as this case is litigated and the public will remain secure while persons adjudicated mentally ill and dangerous to the public are confined pursuant to their commitment orders. The state courts will presumably continue to evaluate petitions for release and grant them as appropriate.  NGRI patients may continue to petition for permanent release when they no longer have a mental illness.

Plaintiffs have not established that they are entitled to the extraordinary remedy of a preliminary injunction at this time.

**IT IS HEREBY ORDERED:**

1.  Plaintiffs' Motion for Preliminary Injunction (ECF No. 17) is **DENIED**.

2.  Plaintiff J.T. shall be dismissed from the case.

The District Court Executive is hereby directed to enter this Order and furnish a copy to counsel, and to terminate J.T. from the caption of this case.

**DATED** October 24, 2014.



THOMAS O. RICE
United States District Judge

ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTION ~ 21